El Pueblo de Puerto Rico, demandante y apelado, *v.* Al Kravitz, acusado y apelante.

*Número:* CR-76-20      *Resuelto:* 15 de septiembre de 1976

*Benjamín Ortiz,* abogado del apelante; *Miriam Naveira de Rodón, Procuradora General, y Maggie Correa Avilés, Procuradora General Auxiliar,* abogados de El Pueblo.

### SENTENCIA

Sentenciado por tribunal de derecho a cumplir de 10 a 15 años de prisión por una infracción a la Ley de Sustancias Controladas de Puerto Rico,[1] el apelante plantea en su recurso de apelación la comisión de doce errores que a su juicio ameritan la revocación de la sentencia. Examinados los mismos, concluimos que ninguno fue cometido. Veamos.

El primero está relacionado con la alegación de la defensa de que el acusado no estaba mentalmente capacitado para entrar a juicio argumentando la negativa del tribunal de instancia a suspender el inicio del juicio en lo que llegaba de Nueva York un récord psiquiátrico de éste. A tal efecto la defensa señala que el hermano del acusado le llamó desde Nueva York el día antes del juicio y le informó que el acusado había estado internado en un hospital de esa ciudad y que necesitaba una declaración o autorización escrita de éste para que le entregaran el récord psiquiátrico allí guardado.

---

[1] Art. 401 de la Ley Núm. 4 de 23 de junio de 1971 (24 L.P.R.A. sec. 2401).

El planteamiento no puede prosperar. El tribunal no le negó la oportunidad al acusado de demostrar cuál era su condición mental; por el contrario, a tales fines declaró con lugar, el 30 de octubre de 1974, una moción de su abogado para que se le examinase sobre el particular, tras lo cual, en vista celebrada al efecto, el 11 de noviembre de 1974, el Dr. Fernando Tejedor y el Dr. Alfredo Hurtado de Mendoza le informaron que el acusado se hallaba en estado procesable.

Estamos satisfechos de que el tribunal cumplió con su deber de someter el asunto a discusión y análisis. En consideración a la opinión pericial de los facultativos no erró al decretar la continuación de los procedimientos. (²) *Pueblo* v. *Báez*, 67 D.P.R. 301 (1947).

Los errores dos, cinco y seis plantean la incomparecencia a la vista del confidente que participara activamente en la alegada compraventa. Sostiene el apelante que erró el tribunal sentenciador al no ordenar la comparecencia de este testigo; al encontrarle culpable a pesar de que se presumía que su declaración sería adversa al Ministerio Fiscal; y de que por tales razones, la declaración del agente encubierto debía considerarse con sospecha y cautela.

No tiene razón. Se trataba de un confidente participante, conocido del acusado. Ni su nombre, ni su paradero se le ocultaron. Ni siquiera hubo alegación de privilegio por parte del Estado. De hecho, el agente encubierto declaró el nombre de éste desde el estrado e indicó conocer el sitio donde se le podría localizar. (T.E. págs. 40–42; vista del 13 de noviembre de 1974.)

La defensa tuvo oportunidad de citarlo y no lo hizo, a pesar del interés que anteriormente había manifestado por investigarlo, y haber obtenido una posposición del caso por

---

(²) No se hizo constar la fecha para la cual estuvo recluido el acusado a los fines de considerar los factores de contemporaneidad y relevancia del expediente a la cuestión de su procesabilidad.

tal motivo. No puede ahora, en grado de apelación, quejarse de su ausencia; *Pueblo* v. *López Rivera*, 102 D.P.R. 359 (1974).

La defensa planteó ante el tribunal de instancia que de la ausencia del confidente participante debía presumirse que su testimonio perjudicaría la posición de El Pueblo. (T.E. pág. 52; vista del 14 de noviembre de 1974.) Sobre el particular debemos señalar que se trata de una advertencia que representa un elemento o circunstancia a considerar al sopesar y evaluar toda la prueba desfilada por el Estado tendente a establecer el delito imputado, en especial el testimonio del único testigo de la transacción. *Pueblo* v. *Acosta Escobar*, 101 D.P.R. 886 (1974); *Pueblo* v. *Rosario Torres*, 101 D.P.R. 840 (1973). En si, no constituye una norma que obligue a absolver, a menos que se trate de un testimonio "flaco y descarnado", *Pueblo* v. *Ayala Ruíz*, 93 D.P.R. 704 (1966), o uno de "falsedad transparente", *Pueblo* v. *López Rivera*, 102 D.P.R. 359 (1974).

Hemos estudiado el testimonio del agente encubierto y creemos que el mismo, de merecerle crédito al juzgador de los hechos era suficiente por sí solo para condenar.[3]

En resumen, el agente explicó la ocurrencia de la transacción del siguiente modo: En compañía del confidente llega al Restaurant China Doll, el 13 de febrero de 1974 y se encuentran con el acusado. El confidente le presenta al acusado y le dice a éste que su amigo necesita material—refiriéndose a cocaína—para vendérsela a unos clientes. El acusado tras preguntarle al confidente si su amigo era de fiar, le pidió y obtuvo un billete de veinte dólares, se fue y regresó al rato, trayéndoles un poco de cocaína, envuelta en el billete de veinte dólares y dentro de una caja de fósforo. Les

---

[3] El testimonio de un agente encubierto no requiere corroboración. *Pueblo* v. *Acosta Escobar*, 101 D.P.R. 886 (1974). Véase sobre las normas a seguirse para librar su testimonio del calificativo de "flaco y descarnado" a *Pueblo* v. *González del Valle*, 102 D.P.R. 374 (1974).

pidió que la probasen, lo cual éstos simularon hacer en el servicio sanitario del local, manifestándoles luego su satisfacción con la misma. Acordaron entonces la cantidad a comprar, el precio y reunirse la noche siguiente para la entrega. Esa misma noche le entregó la evidencia obtenida a su agente de contacto, lo cual fue corroborado por éste.

El 14 de febrero de 1974 la transacción no se completó por no asistir el acusado a la cita acordada.

El 15 de febrero de 1974 coincidieron las partes en el China Doll y tras un breve intercambio de palabras, el agente le preguntó al acusado por el material, a lo que éste respondió que lo había conseguido pero no haría negocio con él directamente, sino por medio del confidente. El agente le ripostó que no compraría una cosa sin saber lo que era, por lo que el acusado les pidió que lo esperaran y se retiró de la barra momentáneamente. Al regresar, trajo consigo un poco de cocaína, envuelta dentro de un papel de *Mastercharge* y se lo dio al confidente para que lo probasen. El confidente lo entregó seguidamente al agente y salieron del local.

En esos momentos pasó en un automóvil el supervisor del agente, quien estaba al tanto de la investigación y del por qué de su presencia en el China Doll, por lo que éste, tras decirle al confidente que lo esperara en lo que hacía una llamada telefónica, se montó en su carro y lo siguió hasta un sitio cercano donde el supervisor se detuvo a esperarlo. Allí le explicó el problema que había surgido y el supervisor le instó a buscar la manera de que el negocio se hiciese en su presencia. Tras esta corta conversación, regresó a buscar al confidente y juntos entraron al negocio. Al verlos, el acusado les preguntó si el material estaba bien y si iban a realizar el negocio; respondiéndosele en la afirmativa. Les pidió el dinero por adelantado y el agente se lo suministró al confidente y éste se lo entregó a el acusado, quien se dirigió hacia la parte posterior del negocio. Al retornar, introdujo el material por debajo de la falda de la camisa al confidente

y se retiró otra vez. Seguidamente, el confidente dijo tener el material, que ya podían irse y a petición del agente se levantó la camisa para que éste mirara, tras lo cual salieron a reunirse con el supervisor, quien los estaba esperando en el Centro Comercial de Laguna Gardens. Allí mismo, le entregaron la evidencia adquirida.

El supervisor corroboró el testimonio del agente en el juicio, y en adición, como testigo del Pueblo, asistió un químico de la policía a los fines de la identificación y del análisis de las sustancias objeto de la compraventa.

No hubo testigos de defensa.

La relación de la prueba expuesta establece indubitadamente los elementos básicos del delito imputado. El tribunal la aquilató y adjudicó la credibilidad, por lo que no hemos de intervenir en apelación con su apreciación. *Pueblo* v. *Cruz Negrón*, 104 D.P.R. 881 (1976).

El tercer y el décimo error plantean, básicamente, como error que el tribunal de instancia declaró sin lugar las objeciones de la defensa a aquella parte del testimonio del agente en que éste habla o repite manifestaciones del confidente, quién no era testigo de El Pueblo en el juicio y a quien, por tanto, la defensa no pudo contrainterrogar.

El error no fue cometido. Se trataba de actuaciones o manifestaciones vistas o escuchadas por el agente, esto es que le constaban de propio conocimiento, y que eran admisibles, no por la veracidad de su contenido y sí a los fines de explicar la conducta y motivación de los agentes o la del acusado en ciertos momentos así como para narrar el progreso y culminación de la transacción realizada. [4]

En ningún momento se le dio valor probatorio a estas expresiones o actuaciones y la prueba directa desfilada por sí sola fue suficiente, al ser creída, para sostener el fallo emitido.

---

[4] T.E. págs. 18, 19, 21, 30 y 31; vista del 13 de noviembre de 1974.

El cuarto y noveno error también están relacionados, alegándose en ambos que era necesario se registrase al confidente, con anterioridad a la transacción, para asegurarse que el material que le entregó al agente, no se lo había colocado él mismo bajo la camisa, para luego hacerlo aparecer como que le fue entregado por el acusado. Tal contención se basa en los casos de California, *People* v. *Basler*, 31 Cal. Rep. 804; *People* v. *Castedy*, 15 Cal. Rep. 413; *People* v. *Wilkins*, 2 Cal. Rep. 908, alegándose que de dicho registro y del testimonio del confidente, la convicción no puede prevalecer.

La jurisprudencia citada resuelve que cuando la transacción se realiza a solas entre el confidente y el acusado y el primero no comparece a juicio, debe demostrarse mediante registro previo a la transacción del confidente, que éste no tenía ni tuvo oportunidad de obtener el material delictivo que alega el acusado le suministró.

En el caso de autos, la transacción se llevó a cabo en presencia del agente encubierto, por lo que, los referidos casos no son de aplicación. La cadena de identificación de la prueba no fue interrumpida. Su testimonio es suficiente, de ser creído, para establecer la realidad de los hechos, sin necesidad de que declarase el confidente.

El agente atestiguó que el apelante le colocó "algo" debajo de la camisa al confidente, a cambio de mil ochocientos dólares(5) que él le suministrase para la compra del material

---

(5) T.E. pág. 31; vista del 13 de noviembre de 1974. En el contrainterrogatorio, el agente explicó dicha expresión de la siguiente manera, la cual copiamos a los fines de rebatir el argumento de que la transacción no se realizó en su presencia:

"P. En relación a los hechos de febrero 15, usted habló aquí de que supuestamente se le entregan unas muestras en primera instancia por el señor Kravitts, usted dice al confidente?

"R. Sí, señor.

"P. ¿Correcto?

"R. Sí, señor.

"P. ¿Y que eso fue como a qué hora de la noche?

"R. Eso fue como a las 8:45 P.M.

y que realizado ese intercambio, salieron seguidamente del negocio y el confidente le entregó la cocaína.

Como expresáramos anteriormente, el agente estuvo presente en las dos ocasiones en que el apelante les dió cocaína a probar; la primera vez, el 13 de febrero, envuelta en un

---

"P. ¿Y después usted dice que usted ve cuando el confidente se levanta la camisa y usted ve, entonces un paquete que lo tenía y que al cinto, el confidente?

"R. Eso fue a las 10:45.

"P. Ahora, ¿usted no vió nada en las manos del señor Kravitts?

"R. Yo lo ví dándoselo a él.

"P. ¿Usted vió el paquete?

"R. Yo ví cuando él se acercó al lado de él y cuando se lo estaba metiendo por el lado de la camisa.

"P. ¿Qué si usted vió el paquete?

"R. Si, señor, yo ví lo que le estaba dando.

"P. ¿Usted prestó una declaración sobre los hechos del 15 de febrero?

"R. Sí, señor.

"P. ¿Mire a ver si es esta declaración que yo le muestro a usted aquí?

"R. Sí, señor. Esta misma es.

"P. Léala, tenga la bondad y busque precisamente en la parte que usted habla . . . .

"HON. JUEZ:

"Deje que la lea primero.

"TESTIGO:

"R. Que como quince minutos más tarde. . . .

"HON. JUEZ:

"¿La terminó de leer?

"TESTIGO:

"Sí, la leí.

"ABOGADO:

"La joven era la misma estenotipista que estuvo en la vista anterior?

"HON. JUEZ:

"Ese estenotipista vino hoy?

"Según me informa la Srta. Ortíz, él no vino hoy.

"ABOGADO:

"P. Mire, lo que usted dice aquí y que fue lo que usted declaró cuando el señor fiscal lo interrogó, 'que como quince minutos más tardes, después de sentarse al lado del confidente, le metió algo por debajo de la faldeta de la camisa al confidente.'

"¿Eso es lo que usted dice?

"R. (no contesta).

billete de veinte dólares, dentro de una caja de fósforos y la segunda, el 15 de febrero, envuelta en un papel con el nombre *Mastercharge* impreso.

En estas circunstancias la ausencia del confidente en la vista y el que no fuera registrado previamente por el agente, constituían factores ordinarios, y no excepcionales, a ser evaluados por el tribunal sentenciador como parte de la apreciación total de la prueba; aspecto sobre el cual como tribunal apelativo no intervendremos.

Como séptimo error se argumenta la omisión del agente encubierto de llevar a juicio la libreta de apuntes o notas en que había escrito o anotado lo relacionado con esa y otras transacciones en que había participado para esa fecha, privó al apelante de una parte esencial de su defensa ya que los mismos pudieron servir de base para impugnar al agente. Señala que tal omisión debe acrecentar o intensificar la cautela y sospecha con que debe ser considerado ese testimo-

---

"P. Usted no dice, le metió el paquete ni le metió un paquete de cocaína.

"R. Porque en ese momento yo no estaba seguro que era cocahína, [*sic*] tenía que examinarla antes de ver si era algo.

"P. ¿ Usted dice, le metió un paquete forrado de 'Selofan', o dice le metió algo?

"R. Le metió algo debajo de la camisa.

"P. El algo ese, usted no lo vió?

"R. Yo ví que le metió algo, pero no podía apreciar lo que era.

"P. Entonces, como si fuera poco usted dice más alante, como ya el Tribunal admitió esta parte que voy a leer, sin renunciar al planteamiento, voy a leer lo que dice él sobre esto, 'que el confidente me dijo que nos fuéramos, que ya tenía el material y yo por corroborar si era cierto le dije que me lo enseñara'. ¿ O sea, que usted no lo había visto?

"R. Yo no sabía qué era el material.

"P. Usted para corroborar que era cierto lo dijo al confidente que se lo enseñara, que le enseñara el material? En otras palabras, que usted no sabía si tenía el material el confidente? ¿ Es o no cierto?

"R. Yo sabía que el confidente. . .' yo sabía que le había quedado [*sic*] algo.

"P. Pero usted no sabía qué era el material?

"R. Yo no sabía qué era el material, por eso le dije que me lo dejara ver."

nio ya que podría ser equivalente a una supresión de evidencia en contra del acusado.

El agente encubierto declaró que él acostumbraba hacer anotaciones en una libreta sobre los casos en que intervenía, pero que la libreta con la información sobre el apelante se le había extraviado con posterioridad al arresto de éste. Esos apuntes, los más inmediatos al momento de los hechos, le servían de base para la redacción del informe de delito y después para la declaración jurada ante un fiscal que exige el Art. 523 de la ley, (6) las cuales no se alega que no estuviesen disponibles para la defensa.

El propósito evidente de la defensa era examinarlos, a ver si de alguna manera podían servir para impugnar la credibilidad del testigo. Se trataba de una expectativa, ya que, por otro lado, tal vez hubiesen robustecido la versión del agente.

No obstante, independientemente de lo deseable de que se hubiese producido la libreta, tal cosa no era posible. El agente afirmó haberla perdido y el tribunal de instancia no entendió que se le estaba ocultando evidencia; por el contrario, le dio crédito a su testimonio. No creemos que errara al así hacerlo.

El octavo error señalado consiste en la alegación de que no hubo prueba de que se hubiese prestado una declaración jurada sobre los hechos, por parte del agente encubierto o del confidente, dentro de las ciento veinte (120) horas de la transacción de la venta, según lo exige el Art. 523 de la ley (24 L.P.R.A. sec. 2523).

El error no se cometió. Si el apelante entendía que ni la declaración jurada del agente, ni su testimonio, podían ser presentados en evidencia, debió plantearlo ante el tribunal de instancia para que éste resolviese sobre su admisibilidad,

---

(6) 24 L.P.R.A. sec. 2523.

ya que el Art. 523 le confiere facultad de determinar si hubo o no justa causa para la demora. (7)

En ausencia de controversia oportuna y debidamente planteada, no estamos convencidos de que deba exigírsele al Ministerio Fiscal que alegue y pruebe que la declaración se sometió en tiempo o que de haber una demora, la misma fuese razonable.

El undécimo error señalado plantea la defensa de *entrapment*. El señalamiento es tardío e inmeritorio.

En el caso ante nos, el confidente le presentó al agente al acusado, le manifestó que éste tenía muchos clientes y necesitaban material, refiriéndose a cocaína, pidiéndole que le consiguiera alguna. El acusado tras preguntarle al confidente si podía confiar en su acompañante, produjo una muestra de cocaína y entonces quedaron en reunirse al día siguiente para completar la compraventa de cocaína.

Al acusado solo se le brindó la oportunidad de cometer un delito, no fue instigado a ello. Ya en *Pueblo* v. *García*, 92 D.P.R. 573 (1965) "[a]ntes de que el problema de entrampamiento pueda justamente decirse que se ha presentado en un proceso criminal debe haber habido por lo menos alguna demostración del tipo de conducta por parte de agentes del gobierno que muy bien han podido inducir al acusado a cometer el delito imputado." Aquí no hay prueba en tal sentido. Sería ilógico que pueda caracterizarse como entrampamiento una transacción como la de autos, mediante la cual un agente simplemente ofrece comprar cocaína a una persona y ésta se la suministra.

Finalmente, se imputa como error un alegado estado de

---

(7) En el expediente ante nos, no aparece la declaración jurada ni la fecha en que el agente encubierto la prestó. La Oficina del Procurador informa en su alegato que luego de realizada la venta el 15 de febrero de 1974, la declaración jurada se prestó el 19 de febrero de 1974 a las 6:15 P.M., dentro del término prescrito.

predisposición en contra del acusado por el tribunal sentenciador.

El señalamiento es inmeritorio. El tribunal a quo se limitó a exponer las razones por las cuales no podía acceder al pedido de la defensa de posponer el inicio del juicio en lo que se recibía el récord médico antes mencionado. Entendió correctamente que el pedido era tardío y que si el acusado no había cooperado en la preparación de su propia defensa, informándole a su abogado en tiempo de su historial médico, esa era su responsabilidad. Hemos leído la totalidad de la transcripción de la evidencia y no hemos encontrado indicio de parcialidad o prejuicio judicial en contra del acusado.

Después del incidente relatado, el acusado no hizo planteamiento respecto a una posible inhibición del juez de instancia; por el contrario, renunció válidamente a su derecho constitucional a un juicio por jurado, lo cual resulta incompatible con la alegación de que dudaba de poder obtener un juicio justo e imparcial. Tampoco representan señal de predisposición o prejuicio las siguientes manifestaciones del tribunal, a las cuales alude el apelante le fueron hechas luego de encontrarlo culpable:

"Se cancela cualquier derecho de fianza que tenga el acusado en la jurisdicción local, ya que el Tribunal toma conocimiento de que el acusado se encuentra bajo custodia por los agentes federales."

No hay constancia de que dicho conocimiento que surgía de los autos del caso, le hubiese afectado adversamente. Tales expresiones no se referían a su culpabilidad en el caso que tenía ante sí el magistrado, ni desvirtúan el hecho de que la prueba presentada, creída como fue, era suficiente para sostener una convicción por el delito imputado.

Se dicta Sentencia confirmando la del Tribunal Superior, Sala de San Juan.

Así lo pronunció y manda el Tribunal y certifica la Secretaria Interina. El Juez Asociado Señor Díaz Cruz disintió

mediante Opinión con la cual están conformes el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué.

(Fdo.) Carmen Lesbia Colón
*Secretaria Interina*

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz en la cual concurren el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 15 de septiembre de 1976

La decisión mayoritaria confirma una sentencia de 10 a 15 años de prisión basada en prueba inaceptable. La transacción de venta se describe como hecha con un confidente, no con el agente encubierto a pesar de que se dice que este último estaba presente. El encubierto declara que el acusado "le metió *algo* por debajo de la faldeta de la camisa al confidente" (T.E. pág. 31 y ss.) pero luego se contradice al declarar que "el confidente me dijo que nos fuéramos, que ya tenía el material y yo por corroborar si era cierto le dijo que me lo enseñara." Primero dice que vio y seguido añade que demandó que se lo enseñara. Entonces *no vio*.

Ya en algunas jurisdicciones se excluye este tipo de evidencia de confidente si no se demuestra que éste ha sido registrado momentos antes de la transacción para cerciorarse de que no fue el confidente quien suplió y produjo la droga para beneficiarse del precio, en este caso $1,800. Agrava la nublada credibilidad en este caso el hecho de haberse extraviado la libreta de apuntes del encubierto en que hizo la entrada original sobre su intervención. Declaró el agente que se le perdió dicha libreta después del arresto del acusado.

Hemos tenido infortunadas experiencias con agentes en-

cubiertos a pesar de que tienen una formación moral superior a la de los confidentes. Aquí se trata de una larga condena de presidio, equivalente a la que se impone a un reo de asesinato en segundo grado, descansando en prueba sospechosa. Nuestro sentido de justicia no nos permite anular la libertad del apelante dependiendo de tan cuestionable evidencia.

Revocaríamos la sentencia apelada.