EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ L. LÓPEZ RIVERA, acusado y apelante.

*Número:* CR-73-70 *Resuelto:* 31 de mayo de 1974

*Wilfredo Figueroa Vélez,* abogado del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Ruth Tentori de Lebrón-*

*Velázquez, Procuradora General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El Ministerio Público formuló acusación contra José L. López Rivera imputándole tres infracciones en grado subsiguiente al Art. 29 de la anterior Ley de Narcóticos consistentes en la posesión, ocultación y transportación y venta de heroína, 24 L.P.R.A. sec. 974z, por hechos ocurridos el 16 de octubre de 1971. Después de haber renunciado a su derecho a juicio por jurado se celebró la vista de todos los cargos el 7 de febrero de 1973 por tribunal de derecho. El tribunal de instancia declaró al acusado culpable de los delitos imputados y le impuso una condena de diez (10) a quince (15) años de presidio en cada uno de los primeros dos cargos y de quince (15) a veinte (20) años de presidio en el tercer cargo para ser cumplidos consecutivamente. Inconforme con el fallo del tribunal sentenciador, el acusado radicó el recurso de apelación que nos ocupa.

El apelante, por su representación legal, apunta cuatro errores de derecho que alegadamente cometió el tribunal de instancia.

En el primer error ataca en forma general la suficiencia de la prueba y de manera específica el testimonio del principal testigo del Pueblo—un agente encubierto.

Dentro de dicho error el apelante señala que "no hay garantía de veracidad en el testimonio del agente encubierto porque no ofreció el Estado una explicación de la tardanza del Agente para prestar la declaración jurada."

No tiene razón el apelante. El agente Vicente Rivera Nazario sí explicó por qué prestó una declaración jurada ante un fiscal luego de transcurridos tres meses desde la ocurrencia de la alegada transacción ilegal. Declaró el agente que entendía que bajo la "vieja" Ley de Drogas no estaba obligado a prestar una declaración jurada dentro de determi-

nado límite de tiempo([1]) (T.E. Parte 1, págs. 88–89.) No es este el caso de un testimonio estereotipado acompañado de una dilación irrazonable en la prestación de la declaración jurada para la determinación de causa probable (véase *Pueblo v. Ayala Ruiz*, 93 D.P.R. 704 (1966) ni la atestación de "falsedad transparente" que recientemente nos hizo revocar la sentencia condenatoria del tribunal de instancia en *Pueblo v. Rosario Torres*, 101 D.P.R. 840 (1973). Esta precisamente es la situación que excepcionamos en nuestro dictamen de *Rosario Torres*, supra, en el que el "agente ignora que lo propio es dar en breve plazo una declaración al fiscal y de buena fe cree que ha cumplido con entregar la evidencia en el cuartel."

Señala además la representación legal del apelante que el Ministerio Público no trajo prueba sobre el resultado de la investigación de los hechos de este caso y de los otros casos asignádoles al agente. Se queja además, el apelante de que el tribunal de instancia limitó irrazonablemente su contrainterrogatorio del agente encubierto al no permitirle obtener detalles sobre otras transacciones de drogas en las cuales se vio envuelto dicho agente en fecha cercana a la de los hechos del presente caso.

■ Si bien es cierto que el Pueblo no presentó prueba sobre los resultados de la investigación asignada al agente, esta omisión fue subsanada por la propia defensa ya que como resultado de su contrainterrogatorio, el testimonio del agente encubierto se ajustó a las guías mínimas que estable-

---

([1])Para la fecha de los alegados hechos punibles (16 de octubre de 1971) la nueva Ley de Sustancias Controladas ya había sido aprobada pero no era aún efectiva la disposición de dicha ley que obliga a los agentes encubiertos que intervengan o participen en una venta de drogas y sustancias controladas a prestar una declaración jurada ante un Fiscal dentro de las 120 horas siguientes a haberse consumado la transacción, a menos que se demuestre justa causa para la demora en someterla dentro del término indicado. Véase 24 L.P.R.A. sec. 2523 y el Art. 608 de la Ley de Sustancias Controladas, Ley Núm. 4, pág. 553, de 23 de junio de 1971.

cimos en *Pueblo* v. *Ayala Ruiz*, supra (T.E. Parte 1, págs. 20–40; págs. 65–73) para la atestación de un encubierto.

Examinemos la parte pertinente del contrainterrogatorio de la defensa al agente encubierto que reproducimos a continuación, a los fines de determinar si el juez de instancia abusó de su discreción al restringir el mismo:

"P. Oiga, el día 18, lunes, a dónde fueron ustedes a comprar?
R. Fuimos a Country Club porque el confidente conocía . . .
P. Dónde fueron a comprar, no me diga quién conocía.
R. A Country Club.
P. ¿A quién le compraron?
R. No le compramos a nadie.
P. En Country Club no le compraron a nadie. ¿En algún otro sitio ese día lunes 18 de octubre que usted hiciera alguna compra?
R. Lunes 18, sí, el 18 en Puerta de Tierra.
P. ¿Ah?
R. En Puerta de Tierra.
P. ¿En Puerta de Tierra el 18 de octubre?
R. Sí, señor.
P. ¿A quién compró usted?" (T.E. Parte 1, pág. 83.)

Al levantar el fiscal una objeción se desarrolló una discusión sobre la admisibilidad de la pregunta, la que resolvió el tribunal permitiendo la pregunta, continuando el incidente en la forma siguiente:

"R. Es que yo no le puedo decir el nombre de la persona, ya que el individuo no ha sido arrestado.
HON. JUEZ:
Bien, ésa es la contestación del testigo.
LIC. FIGUEROA VÉLEZ:
P. ¿Qué usted quiere decir, que hay una orden de arresto contra él pero que no ha sido arrestado?
HON. JUEZ:
Ya él contestó. El Tribunal entiende que es responsiva la contestación.
LIC. FIGUEROA VÉLEZ:
Sí, S.S., es para aclarar que no ha sido arrestado.

HON. JUEZ:

El Tribunal entiende que es responsiva.

LIC. FIGUEROA:

Sí, es responsiva, S.S., no cuestionamos eso. Lo que quiero, por ejemplo, que me aclare eso de 'No ha sido arrestado', si es que hay una orden de arresto contra el individuo.

. . . . . . . .

HON. JUEZ:

Para los efectos y propósitos de la pregunta es suficiente la contestación del testigo a los efectos de impugnar su credibilidad. Hasta ahí es responsiva la pregunta y el Tribunal la permitió.

LIC. FIGUEROA VÉLEZ:

Fíjese, V.H., mire dónde yo voy. Es fácil ahora, el testigo que ve que S.S. le ha ordenado contestar, decir: 'No ha sido arrestado'. Fíjese V.H., y puede ser que ni siquiera exista un caso en corte contra nadie acusada de haberle vendido a este señor el 18 de octubre de 1971. Por eso es que yo le pregunto si hay una orden de arresto porque *entonces nosotros podríamos verificar si hay algún caso pendiente de arresto*, que esté en la sala de vista preliminar o que esté radicado en el Tribunal Superior, a base de lo que él diga o declare de que hay una orden de arresto. Pero si no se me permite la pregunta, él se escuda detrás de eso. (Énfasis suplido.)

HON. JUEZ:

A la reconsideración, no ha lugar." (T.E. Parte 1, págs. 86–88.)

■ El tribunal de instancia, al limitar el contrainterrogatorio del testigo Rivera Nazario en la forma reseñada, no cometió tal abuso de discreción que amerite la revocación. Véase *Pueblo* v. *Gómez*, 45 D.P.R. 812, 814–815 (1933). El abogado defensor no demostró adecuadamente la pertinencia de la pregunta. Por el contrario el carácter del contrainterrogatorio revela su intención de efectuar una "exploratoria de pruebas" (*fishing expedition*) sobre información que pudo haber obtenido con antelación al juicio. El tribunal sentenciador debe evitar la dilación injustificada de los procedimientos judiciales, naturalmente sin que ello vaya en perjuicio de los derechos sustanciales del acusado. Estamos con-

vencidos de que no hubo tal perjuicio en el caso de autos. Véanse 32 L.P.R.A. sec. 2143; *Pueblo* v. *Gómez*, supra, pág. 814; *Pueblo* v. *Camacho*, 69 D.P.R. 358, 360–61 (1948); *Pueblo* v. *Vázquez*, 68 D.P.R. 67, 83 (1948).

En cuanto a la suficiencia de la prueba presentada por el Pueblo, basta un somero examen de la transcripción de la evidencia para concluir que todos los elementos esenciales de los delitos imputados fueron cubiertos. No tenemos duda que la prueba de cargo, creída, como resultó ser, por el juzgador de los hechos, fue suficiente para establecer la certeza de las imputaciones.

El tercer error apuntado está íntimamente relacionado con el que hemos discutido precedentemente. Sugiere que al impugnar la defensa la veracidad del principal testigo del Ministerio Público, surge la existencia de duda razonable y por ende debe absolverse al acusado. No es necesario reproducir aquí el incidente impugnatorio. Basta decir que el agente encubierto se contradijo en dos ocasiones: primero, al declarar que había hecho una descripción física de la persona que "le vendió drogas" en la declaración jurada que prestó ante un fiscal y luego al afirmar que tal descripción constaba en el "informe de delito" preparado por él sin que apareciera tal descripción en ninguno de los dos documentos mencionados. El testigo explicó a satisfacción del tribunal que recordaba haber incluido la descripción pero que al transcribirse los documentos había quedado ésta fuera sin haberse apercibido de ello.

■ La Ley de Evidencia, en su Art. 162, Art. 524 del Código de Enjuiciamiento Civil, párrafo tercero, (32 L.P.R.A. sec. 1679), al expresar que: "Un testigo que hubiere faltado a la verdad en una parte de su declaración, deberá ponerse en dudas respecto a otras.", sirve de guía al juzgador de los hechos, en su determinación sobre la credibilidad de un testigo, pero no constituye una camisa de fuerza. De suerte que al faltar un testigo a la verdad en una parte de su testi-

monio no lleva la implicación absoluta de que deba rechazarse el resto de su declaración. *Pueblo* v. *Nazario*, 87 D.P.R. 130 (1963) ; *Pueblo* v. *Nieves*, 57 D.P.R. 784 (1940). Hemos sostenido que una contradicción en el testimonio de un testigo sobre cuestiones que no son fundamentales, *sino más bien sobre sucesos posteriores a los hechos delictivos*, no obligan al juez a descartar el resto de su testimonio. *Pueblo* v. *Pacheco Betancourt*, 92 D.P.R. 698 (1965). (Énfasis suplido.) Sabido es que la máxima *falsus in uno, falsus in omnibus* no autoriza a rechazar toda la declaración de un testigo porque se haya contradicho o faltado a la verdad respecto a uno o más particulares. En otras palabras, es imprescindible armonizar toda la prueba y analizarla en conjunto a los fines de arribar al peso que ha de concedérsele a la prueba en su totalidad. *García* v. *Tribunal Superior*, 86 D.P.R. 823 (1968).

 Estando las alegadas contradicciones del testigo del Pueblo relacionadas con prueba sobre eventos ocurridos con posterioridad a la transacción delictiva, corresponde al juez que oye y ve los testigos sopesar tal impugnación frente a toda la prueba que desfiló en el proceso. *Pueblo* v. *Rodríguez González*, 101 D.P.R. 1 (1973). En ausencia de error manifiesto o arbitrariedad en la apreciación de la prueba, este Tribunal no intervendrá con el dictamen del tribunal sentenciador. *Pueblo* v. *Nevárez Virella*, 101 D.P.R. 11 (1973) ; *Pueblo* v. *Santos Vázquez*, 89 D.P.R. 88 (1963).

El segundo error señalado por el apelante plantea la ocultación del paradero del confidente participante "para que no pudiera ser citado por la defensa." El incidente que motiva este planteamiento surge del contrainterrogatorio al Sargento Cotto, supervisor del agente Rivera Nazario, en la siguiente forma:

"P. Oiga, y el confidente ése, de dónde salió?
R. El confidente es del pueblo de Arecibo.
P. ¿Dónde está?
R. Que yo sepa, de momento ahora no sé porque desde el '71 dejé de verlo, no sé dónde pueda estar ese joven ahora.

P. ¿Usted quiere decir al Señor Juez que usted no sabe por qué él no está en Arecibo ya, o qué le ocurrió a él? ¿Usted no sabe o usted sabe?

R. Yo no he dicho que no esté en Arecibo, yo no sé dónde está ahora, desde el '71 no lo veo.

P. ¿Usted no sabe si está en Arecibo?

R. No sé.

P. ¿Y el nombre completo de él?

R. El me parece que era Rafael Rivera Correa, algo así.

P. ¿Rafael?

R. Rivera Correa, me parece que es.

P. ¿Le parece?

R. Sí, no estoy seguro porque eso fue en el '71, pero más o menos creo que ése es el nombre.

P. ¿Le parece, cree, o usted sabe que ése es el nombre de él?

R. Creo que es el nombre de él.

P. ¿Está seguro?

R. Estoy casi, pero no puedo decir seguro porque puede haber algún apellido que esté equivocado, por eso digo que casi estoy seguro.

P. ¿Y sabe la dirección?

R. No, señor; vive en un barrio de Arecibo.

P. ¿Pero ese barrio no tiene una dirección?

R. No, señor.

P. ¿Cuál es el barrio?

R. En cuanto a la dirección específica de él no puedo decirle porque no sé.

P. ¿Cuál es el barrio?

R. No sé, sé que es un barrio de Arecibo, pero no sé.

P. Usted que era el que le pagaba, lo contrató, que lo usaba, no sabe el barrio.

R. No, señor.

P. ¿Nunca lo fue a buscar allá?

R. No, señor." (T.E. Parte 1, págs. 104–106.)

■ En *Pueblo* v. *López Rivera*, 91 D.P.R. 693, 702 (1965), dijimos ". . . al acusado solicitar la información en el acto del juicio y luego de obtener el nombre completo del confidente . . . el acusado no solicitó tiempo alguno para citar o hacer citar al confidente. . . . No solicitó una posposición del

caso ni solicitó del tribunal que citase al confidente. ..." Tampoco en el presente caso se trató de obtener la comparecencia en corte del confidente, por lo que no puede ahora, en apelación, quejarse de que se le ocultó su paradero para obstruir su citación. (²)

El último señalamiento de error es al efecto de que el tribunal no permitió al acusado "llevar al récord como prueba ofrecida y no admitida parte de la declaración del acusado."

■ La norma general es que objetada una pregunta a un testigo, la parte que lo presenta debe hacer constar en el récord, con toda la amplitud posible, lo que el testigo, a quien no se ha permitido contestar, hubiera declarado; u obtener que se haga un récord completo de la evidencia que trata de elucidarse por medio de la pregunta objetada, con el fin de que este Tribunal pueda determinar si la prueba, de haber sido creída por la corte inferior, hubiera justificado un resultado distinto del caso. *Vicenty* v. *Corona Brewing Corporation*, 73 D.P.R. 135 (1952); *El Pueblo* v. *Diodonet*, 22 D.P.R. 751 (1915). Así, hemos dicho que: "Una corte de justicia carece de facultades para impedir que un litigante ofrezca cualquier evidencia que estime relevante. Si la corte cree que la evidencia no es admisible por cualquier razón legal, su deber es denegar su admisión, pero no puede impedir que el taquígrafo tome razón de la prueba ofrecida, *para que este tribunal, al recurrirse a él, pueda determinar si fue o no errónea la negativa del tribunal inferior,* y si el perjuicio que pudo haber sufrido el recurrente justifica una revocación de la sentencia." *Pueblo* v. *Gelpí*, 55 D.P.R. 750, a las págs. 755–56 (1939). (Énfasis suplido.)

Veamos el incidente que originó el planteamiento que discutimos: El acusado declaraba:

(²) El nombre completo del confidente fue revelado; no hay pues alegación de privilegio de parte del Estado para no revelar la identidad del confidente.

"R. Entonces, él viene y se estaciona y se me queda mirando y me dice, cómo te llamas y le dije, Fulano de Tal y me dice, dónde trabajas y saqué la tarjeta de identificación y se la dí y le dije, yo trabajo en los muelles y así y así y me dijo, no te asustes que no es nada, es que estamos haciendo una investigación con relación a . . . ." (T.E. Parte 2, pág. 28.)

Aquí se produjo la objeción oportuna del fiscal, la cual fue sostenida por el tribunal de instancia. El abogado del apelante trató insistente pero infructuosamente de dejar constancia en el récord de la prueba que pretendía introducir a través del objetado testimonio del apelante.

██ La declaración del apelante con respecto a lo que le dijo un tal agente Vizcarrondo (quien ni había testificado ni era testigo en el caso) sobre el propósito de una investigación es claramente prueba de referencia. La negativa del juez al no permitir que fuera al récord esa evidencia ofrecida y no admitida, no ha impedido que este Tribunal pase juicio sobre la admisibilidad de la evidencia ofrecida; por lo tanto su negativa no conlleva la anulación de la sentencia.

*Se confirmarán las sentencias recurridas.*