Broco Oliveras, Juez Ponente
*1237 TEXTO COMPLETO DE LA SENTENCIA
Se apela de la sentencia de 8 de marzo de 1995 dictada por la Sub-sección de Distrito del Tribunal de Primera Instancia (Jorge Cámara Oppenheimer, J.) mediante la cual se halló culpable al apelante del delito de Agresión Agravada y se le impuso una multa de $100.00 más-las costas. Por entender que no se cometió el error imputado, procedemos a confirmar la sentencia.
I
En el presente caso se cuestiona la suficiencia de la prueba para sostener una condena de agresión agravada, más allá de duda razonable. Debemos, por lo tanto, examinar la prueba testifical desfilada.
Durante el juicio testificó el menor Juan Miguel Vilaró Camacho y expresó: que el 16 de octubre de 1994 en horas de la noche se encontraba frente a su casa en la Urbanización Starlight de Ponce hablando con su amigo Joel Muriel López; que estando allí hizo un silbido con las manos y la boca; que el apelante salió al balcón de su casa y le profirió palabras obscenas y él (el perjudicado) le respondió con palabras similares; que el apelante se le acercó y le dio con el puño en el hombro; que el apelante le volvió a proferir palabras obscenas y lo empujaba con los hombros mientras tenía las manos en la espalda, que mientras el apelante lo empujaba le dijo que no estaba para pelear con él, pero sí con su padrastro; y que el apelante le dijo a su mamá que estaba esperando que su hijo le diera para dejárselo pegado en la pared.
En el contrainterrogatorio Juan Miguel Vilaró Camacho añadió: que nunca antes había tenido problemas con el apelante; que varios jóvenes bailaban en la carretera a la música de un equipo de música; que cuando recibió el impacto del puño se fue hacia atrás; que la esposa del apelante le gritó ' que no le diera; y que no se atendió en ningún centro de salud el golpe recibido; que no le mostró el área al policía investigador; y que no le quedó marca o indicio del golpe.
El testigo de cargo Joel Muriel López dijo: que el día de los hechos estaba bailando frente a la casa de Juan Vilaró (el perjudicado); que vio cuando Juan realizo el silbido; que luego del silbido salió el apelante al balcón y le profirió palabras obscenas a Juan; que Juan le dijo al acusado que él (el apelante) era lo mismo; que el apelante fue hasta donde estaba Juan y le dio con el puño en el hombro; que el apelante con sus manos en la espalda, echó su cuerpo hacia el frente y comenzó a empujar a Juan.
Durante el contrainterrogatorio Joel Muriel López testificó: que no estaba hablando con Juan (el perjudicado) cuando éste hizo el silbido; que Juan hizo un sólo silbido; que el apelante salió al balcón; que cuando el apelante agredió a Juan éste no se fue para atrás ni se movió; que no escuchó al apelante decirle nuevamente palabras obscenas a Juan luego que el acusado bajo de su casa; y que sabe que la madre de Juan presenció la agresión porque ella se lo dijo.
Luego testificó la Sra. Lilliam Camacho, madre del perjudicado, quien expresó: que mientras su hijo estaba al frente de la residencia con unos amigos, ella se encontraba dentro de la casa estudiando con su hija; que escuchó que alguien dijo "no lo toques"; que al salir de su casa vio al apelante con las manos en la espalda empujando a su hijo con los hombros; y que el apelante le dijo que estaba esperando que su hijo le tirara para reventárselo contra la pared.
En el contrainterrogatorio la Sra. Camacho dijo: que antes del incidente había visto a su hijo haciendo silbidos; que estando en el interior de su casa oyó a la esposa del apelante gritar "no lo toques"; que el apelante y ella tienen hospedajes en sus casas; que el apelante había comenzado un proceso en DACO en contra de ella por manejo indebido del hospedaje; y que en otras ocasiones ella denunció al apelante quien había resultado exonerado.
Terminada la prueba de cargo, la defensa presentó una moción de absolución perentoria que fue denegada por el tribunal de instancia. La defensa sometió el caso a base de la prueba del fiscal y solicitó la absolución del acusado a base de la presunción de inocencia y duda razonable. El tribunal *1238 de instancia halló al acusado culpable de agresión agravada y le impuso una multa de $100.00 más las costas.
Inconforme con el dictamen del tribunal de instancia, el acusado presentó el recurso de apelación que nos ocupa.
Le imputó al tribunal de instancia la comisión del siguiente error:

"Erró el tribunal apelado (Hon. Jorge Cámara Oppenheimer, J.) al declarar al acusado Edwin Matos Rodríguez, culpable y convicto del delito imputado a pesar de que las pruebas presentadas por el Ministerio Público no establecieron su culpabilidad más alia de duda razonable y fundada."

En apoyo de su planteamiento de error, el apelante alega que existen muchas contradicciones en los testimonios de cargo sobre aspectos alegadamente esenciales.
El apelante señala que los testimonios del perjudicado y de su señora madre se contradicen en: las veces en que el perjudicado silbó; el tiempo transcurrido desde el silbido hasta que el apelante salió al balcón y lo increpó de palabras; si el apelante se encontraba en el balcón de su casa o en el balcón de la casa de la vecina; si el apelante volvió a insultar al perjudicado cuando se acercó al mismo o si solamente lo empujó con los hombros; y el momento en que la madre salió de la casa en relación con el incidente.
En adición, el apelante señala que el testimonio del perjudicado difiere del testimonio de Joel Muriel en lo siguiente: si durante el silbato Joel Muriel hablaba con el perjudicado o estaba bailando en la calle; el momento en que el apelante salió al balcón en relación con el momento en que se produjo el silbido; si el perjudicado se movió hacia atrás al recibir el golpe o se quedó inmóvil; y si el acusado volvió a insultar al perjudicado cuando se acercó a él.
H
La presunción de inocencia requiere que toda convicción esté sostenida por prueba que establezca más allá de duda razonable todos los elementos del delito y la conexión del acusado con los mismos. Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico. Pueblo v. Bigio Pastrana, 116 D.P.R. 748 (1985); Pueblo v. Pagán Díaz, 111 D.P.R. 608 (1981); Pueblo v. Picó Vidal, 99 D.P.R. 708 (1971). Esto no significa que toda duda posible, especulativa o imaginaria, tenga que ser destruida con el fin de establecer la culpabilidad del acusado con certeza matemática. Sólo se exige que la prueba establezca aquella certeza moral que convence, que dirige la inteligencia y satisface la razón. Pueblo v. Pagán Santiago, Opinión de 20 de mayo de 1992, 92 J.T.S. 56, pág. 9480; Pueblo v. Bigio Pastrana, supra.
La determinación del juzgador sobre los hechos en el tribunal de instancia a los efectos de que la culpabilidad del imputado ha quedado establecida más allá de duda razonable, es revisable en apelación como cuestión de derecho. Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986); Pueblo v. Serrano Nieves, 93 D.P.R. 56 (1966).
El fallo de culpabilidad que hace el juzgador de los hechos en el tribunal de instancia es merecedor de gran deferencia por el tribunal apelativo. Esta norma está fundamentada en que el juez de instancia es quien, de ordinario, está en mejor posición para aquilatar la prueba testifical, pues es el juzgador que ve y escucha declarar a los testigos.
De ordinario el tribunal apelativo no intervendrá con el fallo inculpatorio de un magistrado en ausencia de pasión, prejuicio, parcialidad o error manifiesto en la apreciación de la pmeba, o cuando un análisis integral de la prueba así lo justifique. Pueblo v. Echevarría Rodríguez, Opinión de 25 de abril de 1991, 91 J.T.S. 43; Pueblo v. Fradera Olmo, 122 D.P.R. 67 (1988); Pueblo v. Márquez Díaz, 122 D.P.R. 93 (1988).
III
Entendemos que en el presente caso la prueba creída por el juez de instancia es suficiente para establecer todos los elementos del delito y la conexión entre el acusado y la conducta delictiva.
*1239 El Artículo 94 del Código Penal de 1974, 33 L.P.R.A., See. 4031, define el delito de agresión como el empleo de fuerza o violencia contra una persona para causarle daño. El Artículo 95, inciso (e), 33 L.P.R.A, see. 4032, considera agravada la agresión cuando se cometiere por un varón adulto en la persona de un niño, (subrayado nuestro)
En el presente caso, mediante los testimonios del menor perjudicado y de Joel Muriel, se estableció el hecho central constitutivo del delito imputado. Estos dos testimonios coinciden en que el acusado asestó un puñetazo en el hombro izquierdo del perjudicado. Los dos testimonios antes mencionados y el de la madre del perjudicado están contestes en que el acusado colocó sus manos detrás de su cuerpo, se inclinó hacia el frente empujando al perjudicado con el fin de provocarlo e invitarlo a pelear. El testimonio del perjudicado estableció el agravante al afirmar que el acusado era un varón adulto que medía más de 6 pies de estatura y pesaba más de 240 libras.
En cuanto a las circunstancias que rodearon la comisión del delito, los testimonios del perjudicado y el de Joel Muriel, también coinciden en: que el día de los hechos estaban bailando con otros amigos frente a la casa del perjudicado; que el perjudicado hizo un silbido con las manos y la boca; que luego del silbido el apelante salió al balcón de su casa; que le profirió palabras obscenas al perjudicado, que éste respondió diciendo que lo mismo era el apelante; y que el apelante bajó de su casa y se acercó al perjudicado.
Las supuestas contradicciones entre los testimonios del perjudicado y la Sra. Lilliam Camacho son explicables principalmente a base de que ésta se encontraba dentro de la casa durante la ocurrencia de algunos de los hechos relatados por los testigos que se encontraban frente a la casa. Las diferencias que puedan surgir son el producto de haberse apreciado los hechos desde diversas distancias y no desvirtúan en lo más mínimo los hechos esenciales constitutivos del delito. El que el incidente fuera provocado por un sólo silbido no niega la posibilidad de que durante la estadía de los jóvenes en la calle se produjeran otros silbidos antes de los hechos que nos ocupan. Nótese que la Sra. Camacho afirmó que antes del incidente ella se asomó al balcón y escuchó a su hijo silbar. La Sra. Camacho testificó que antes del incidente observó al apelante en el balcón de la casa de una vecina. En cuanto a los insultos que el perjudicado dijo que le fueron dirigidos mientras el apelante se encontraba frente a él, ni su mamá ni Joel Muriel se encontraban tan cerca del apelante como estaba el perjudicado, y éstos pudieron no haberlos oído. Nótese, además que la Sra. Camacho no podía presenciar y escuchar los insultos si éstos se profirieron cuando ésta todavía no se había asomado al balcón.
Tampoco creemos que sean de importancia las supuestas contradicciones señaladas entre el testimonio del perjudicado y su amigo Joel Muriel. No es indispensable precisar con absoluta certeza lo que hacía Joel Muriel cuando se produjo el silbato. Es un detalle insustancial si el silbido había concluido cuando el acusado salió al balcón o si el silbido no había concluido. Si el perjudicado se movió hacia atrás o permaneció inmóvil son discrepancias insignificantes que pueden ser el resultado de los distintos puntos desde donde se observa, de los diferentes grados de atención entre los testigos, de la dirección hacia donde miraban en diferentes momentos, de las diferencias de criterio entre cada observador respecto de la conducta observada y de las maneras divergentes de expresar lo observado que se dan entre las personas.
Es una norma firmemente establecida la que propugna que meras contradicciones o inconsistencias en el testimonio de un testigo sobre asuntos no esenciales no justifican el rechazo de su testimonio. Pueblo v. De León Martínez, Opinión de 16 de febrero de 1993, 93 J.T.S. 22; Pueblo v. López Rivera, 102 D.P.R. 359, 366 (1974); Pueblo v. Cruz Negrón, 194 D.P.R. 881, 883 (1976).
La veracidad de un testigo no puede impugnarse mediante evidencia que tienda a contradecirle en relación con cuestiones colaterales o inmateriales. Pueblo v. Rodríguez, 66 D.P.R. 317 (1946); Pueblo v. Pou, 55 D.P.R. 305 (1939).
IV
Por los fundamentos antes expresados, concluimos que el error imputado no fue cometido. Por lo tanto, se confirma la sentencia.
*1240 Lo acordó el Tribunal y lo certifica la Secretaria General.
María de la C. González Cruz
Secretaria General