Rossy García, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCION
Por hechos ocurridos el 18 de agosto de 1996, se presentaron denuncias contra el aquí apelante, Ricardo Camacho Ortiz, por infracción al Art. 94 del Código Penal (Agresión Simple), 33 L.P.R.A. sec. 4031, e infracción al Art. 95 del Código Penal (Agresión Agravada), este último en su modalidad de delito grave, 33 L.P. R.A. sec. 4032(2). Luego del trámite correspondiente atinente a la vista preliminar en lo que respecta a la denuncia que le imputaba la comisión del delito grave, se determinó existencia de causa probable para autorizar la continuación del proceso por el delito imputado en su modalidad menos grave. Se remitió así el expediente del caso al Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Cabo Rojo, para la continuación del trámite procesal, quedando, tanto el imputado como la prueba de cargo, citados para la vista en su fondo.
Con estos antecedentes y luego de una serie de incidentes procesales que resulta innecesario reseñar, y la celebración del juicio correspondiente, el foro de instancia (Hon. Borges Vélez Collado) declaró al aquí apelante culpable y convicto de los delitos imputados. Posteriormente y en reconsideración, acogió con aprobación una moción de desestimación promovida por el apelante en lo que respecta a la denuncia por infracción al Art. 94, *1115 supra, predicada ésta en que se le había infringido su derecho a un juicio rápido en lo que respecta a dicho delito. Fundamentó tal determinación el foro de instancia en que el Ministerio Fiscal debió solicitar la consolidación de los procedimientos de ambos casos, lo que no hizo, lo que dio base a la violación del derecho a juicio rápido en lo que respecta a dicho delito menos grave.
De otra parte, y habiendo así dictaminado, se reiteró en su fallo de culpabilidad en lo que respecta a la infracción al Art. 95 del Código Penal, supra, agresión agravada. Procedió luego a emitir sentencia condenándolo a cumplir una pena de reclusión de veinte y cinco (25) días naturales y dos (2) meses en probatoria, condicionado al cumplimiento de unas condiciones que fueron determinadas por el foro apelado y que quedaron consignadas en la sentencia aquí apelada.
Inconforme el apelante con el referido dictamen, interpuso el recurso que nos ocupa. En éste imputa que incidió el foro de instancia al no autoinhibirse de participar en el proceso; al declararlo culpable con una prueba insuficiente para establecer los elementos del delito y su culpabilidad más allá de duda razonable; así como al hacer un análisis de la prueba que no constituye el balance más racional, justiciero y jurídico de la misma.
Resolvemos, luego de un cuidadoso análisis de la totalidad de la prueba que fue aportada en ocasión de la vista en su fondo y, en particular, la transcripción de aquella testifical elevada por las partes, que no se cometieron los errores imputados y que resulta procedente emitir sentencia confirmatoria de la apelada.
I
El trámite procesal en este caso comenzó con la presentación de dos denuncias contra el aquí apelante por el delito de agresión agravada. En una se le imputó agresión agravada menos grave por haber agredido al señor Alberto Vázquez Ortiz con la intención de causarle grave daño corporal. En la otra se le imputó agresión agravada en su modalidad grave por haber empleado fuerza o violencia contra el señor José Moreno Esteves y haberle causado grave daño corporal. Presentadas ambas denuncias ante un magistrado para la correspondiente vista de determinación de causa requerida por la Regla 6 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, éste determinó existencia de causa probable por el delito de agresión simple en uno de los casos y por el delito de agresión agravada en su modalidad de delito grave en el otro. Remitido el expediente para la correspondiente vista preliminar requerida por la Regla 23 de las de Procedimiento Criminal en lo que respecta al delito grave imputado, el Tribunal de Primera instancia, Sub-sección de Distrito, Sala de Mayagüez, determinó existencia de causa probable por el delito de agresión agravada, en su modalidad menos grave. En virtud de ello, se remitió la denuncia al Tribunal de Primera Instancia, Sub-sección de Distrito, Sala de Cabo Rojo, para la correspondiente vista en su fondo, la cual fue señalada para el 30 de mayo de 1997. Luego de una serie de incidentes procesales que se hace innecesario reseñar, se celebró juicio correspondiente, el que culminó según indicado, con el fallo condenatorio y posterior sentencia que es aquí objeto de impugnación. En dicho proceso, la prueba de cargo consistió del testimonio de los dos perjudicados, José Esteves Moreno y Alberto Vázquez Ortiz; de varios testigos oculares, entre ellos, Carlos Casiano Galarza y Efraín García; y el testimonio del Policía Saúl Padilla León, agente encargado de la investigación del caso. Se admitieron también varias fotografías. Finalmente, el Ministerio Público puso a disposición de la defensa al testigo Meraldo de la Torre, quien fue luego llamado a testificar. La prueba de defensa consistió del testimonio del Sr. José A. Ramírez Vélez y aquél del Sr. Enrique Martínez. Además, se presentaron varias fotografías sobre áreas específicas del Poblado de Boquerón.
En lo que respecta a la prueba de cargo, la misma inició con el testimonio del perjudicado, Sr. José Esteves Moreno. Su testimonio fue a los efectos de que el 18 de agosto de 1996, en o alrededor de las 11:30 de la noche se encontraba caminando cerca de la plaza del poblado de Boquerón con los señores Alberto Vázquez y Carlos Casiano. Declaró que al pasar frente al negocio propiedad del acusado Ricardo Camacho, el señor Carlos Casiano se detuvo en el mismo para comprar una bebida, mientras que él continuó caminando con el señor *1116 Alberto Vázquez, deteniéndose un poco más adelante. Declaró entonces que, en ese mismo instante, se suscitó una discusión entre el señor Casiano y el señor Robin Bell, empleado del señor Camacho, y que el señor Efraín García, quien se encontraba hablando con el señor Camacho frente al negocio de éste cuando ocurrió el incidente, intervino en la discusión, separándolos y llevándose al señor Robin Bell para dentro del negocio. Continuó declarando que al moverse donde estaba el señor Casiano, el señor Robin Bell se le acercó y comenzaron a forcejear hasta que cayeron al suelo, quedando él sobre el señor Bell. Una vez en el suelo, el señor Camacho, aquí apelante, se acercó y lo golpeó en varias ocasiones por la parte posterior de la cabeza con una banqueta de madera en la que anteriormente había estado sentado, lo que provocó que el señor Esteves Moreno cayera de frente al pavimento. En ese momento, cayó al lado del señor Alberto Vázquez, oportunidad que aprovechó para retirarse del lugar hacia la plaza (del Poblado), desde donde pudo ver “al Sr. Ricardo Camacho todavía con la banqueta de madera y el Sr. Robin Bell con un taco de billar en la mano, [ambos dándole] al Sr. Alberto Vázquez [quien estaba] en el suelo. ” Asimismo, declaró que “al Sr. Vázquez le estaban pasando la cara con las manos en el piso y le estaban dando en los brazos, en ambos brazos”. También declaró que un grupo de personas que salieron del negocio del señor Camacho lo persiguieron y le tiraron botellas, algunas de las cuales lo alcanzaron. Continuó declarando que fue entonces cuando el señor Meraldo de la Torre, persona a la que conocía a través de unos amigos, entró con su vehículo en contra del tránsito, con las luces largas puestas, lo montó en el carro y lo llevó al C.D.T. de Cabo Rojo, desde donde fue llevado en ambulancia al Centro Médico de Mayagüez. Allí permaneció hospitalizado aproximadamente una semana. También declaró que a consecuencia de los golpes recibidos sufrió una fractura en la mandíbula, razón por la cual tuvo ganchos en la boca para inmobilizarle la mandíbula. Según su testimonio, estuvo un mes y medio o dos meses sin poder comer, ni hablar. Además, le tuvieron que coger sobre 20 puntos de sutura en la parte posterior de la cabeza y recibió varias contusiones en la espalda, resultado de los banquetazos que recibió. Concluyó su interrogatorio directo declarando que en ningún momento él le dirigió la palabra al señor Camacho el día de los hechos.
Durante el contrainterrogatorio, el testigo aceptó que conocía al señor Camacho desde hacía muchos años, pero negó haber tenido problemas con él en el pasado. Asimismo, aceptó haber ingerido uno que otro trago el día de los hechos, pero aclaró que nunca bebe más de dos tragos, porque practica deportes que le impiden tomar grandes cantidades de licor. De otra parte, aseguró que el día de los hechos, el señor Camacho lo agredió con una banqueta, a pesar de que éstos en ningún momento discutieron, ni se dirigieron la palabra.
Por su parte, el testigo Alberto Vázquez, otro de los peijudicados en el incidente, declaró que es coordinador de equipos médicos y que el día de los hechos se encontraba en Boquerón en compañía de José Esteves y Carlos Casiano. Indicó que mientras se encontraba parado con el señor José Esteves entre el negocio del señor Camacho y otro negocio de nombre “Bistro”, se percata de que el señor Carlos Casiano y el señor Robin Bell estaban discutiendo. Declaró que poco después, el señor Robin Bell se acercó donde éstos se encontraban y comenzó a forcejear con el señor José Esteves hasta que ambos caen al suelo. Atestó que observó que entonces el señor Camacho se acercó “con una banqueta y agrede al señor Esteves por la parte de la espalda, dándole en la cabeza.” Continuó declarando que en ese momento, agarró al señor Camacho para “tratar de sacar [lo] de encima [del] señor Esteves, pues lo estaba agrediendo por la espalda”. Al tratar de levantarlo se cayó en el suelo, lo que el señor Camacho aprovechó para agredirlo con la misma banqueta con que estaba agrediendo al señor Esteves. Declaró, finalmente, que también fue agredido por el señor Robin Bell, y que como resultado de los golpes recibidos fue atendido en el Hospital Bella Vista por fracturas en ambas manos.
Por su parte, el testigo Carlos Manuel Casiano, amigo de los peijudicados, declaró que el día de los hechos se encontraba en el Poblado de Boquerón desde tempranas horas de la noche en compañía de José Moreno Esteves y Alberto Vázquez. Testificó que como a eso de las 11:30 de la noche, cuando se dirigía a buscar su vehículo con José Esteves y Alberto Vázquez, se detuvo frente al negocio del señor Camacho a comprar una cerveza. Indicó que encontrándose frente al negocio del señor Camacho, el señor Robin Bell se le acercó y le dijo “de mala *1117 forma” que tenían que irse del lugar y que no podían estar allí, por lo que empezaron a discutir y a forcejear hasta que el señor Efraín García intervino y los separó. Continuó declarando que Robin Bell y el señor Camacho salieron del negocio de éste último y se acercaron al lugar donde se encontraba junto a José Esteves y Alberto Vázquez, lo que provocó una nueva discusión. Declaró que en medio de la discusión, se percató que Robin Bell y José Esteves estaban forcejeando en el suelo. Entonces, mientras José Esteves forcejeaba con Robin Bell en el suelo, el señor Camacho se acercó con una banqueta en la mano y comenzó a golpear a José Esteves por la cabeza y por otras partes de cuerpo. Atestó que al ver esto, salió corriendo y se metió en el negocio “Bistro” para salvar su vida.
En el tumo de contrainterrogatorio, declaró que conocía al señor Camacho desde antes que ocurriera el incidente, pero no así a Robin Bell. También negó que él o alguno de sus compañeros hubiese tenido alguna discusión con Robin Bell o con el señor Camacho, o que les hubiese dirigido la palabra antes de que ocurriera el incidente en cuestión.
El testigo Efraín García Maldonado, quien trabaja en el Cuerpo de Vigilantes del Departamento de Recursos Naturales y, además, tiene una cafetería en el Poblado de Boquerón, declaró que el día de los hechos se encontraba hablando con el señor Camacho cuando Robin Bell y Carlos Casiano comenzaron a discutir. Testificó que al percatarse de la situación, intervino en la discusión y los separó, llevándose a Robin Bell y al señor Camacho dentro del negocio de este último “para evitar el problema que estaba surgiendo”. Declaró entonces que cuando las cosas estaban más calmadas, Robin Bell salió del negocio del señor Camacho, le arrebató un taco de billar a una persona que se encontraba en el lugar y “la emprenfdió] contra unos muchachos”, por lo que se dirigió al teléfono público más cercano para llamar a la policía. Indicó, además, que no recordaba hacia donde se dirigió el señor Camacho cuando Robin Bell salió de su negocio y agredió a los muchachos. Por último, declaró que mientras estuvo hablando con el señor Camacho frente a su negocio, ninguno de los muchachos le dirigió la palabra al señor Camacho, ni éste a ellos.
A preguntas de la defensa, en tumo de contrainterrogatorio, el testigo aseguró que conocía al señor Camacho y a los perjudicados antes de que ocurriera el incidente; que cuando ocurrió la discusión entre Robin Bell y Casiano, tanto él como el señor Camacho se acercaron al lugar; y que para evitar problemas, tuvo que llevárselo junto con Robin Bell para el interior de su negocio.
En tumo de re-directo, el testigo admitió que cuando separó a Robin Bell y a Casiano, el señor Camacho estaba “un poco alterado”, por lo que entendió recomendable llevárselo. Asimismo, admitió que cuando Robin Bell salió del negocio de Camacho, luego del primer incidente, se dirigió hacia donde estaban los muchachos, y que el señor Camacho salió detrás de él, caminando hacia la misma dirección. Por último, testificó a preguntas del Fiscal que no recordaba si finalmente el señor Camacho llegó al lugar en el que estaban el señor Esteves y sus otros amigos.
De otra parte, el agente Saúl Padilla León, agente que intervino en la investigación del incidente y último testigo de cargo, declaró que el día de los hechos estuvo en el lugar de los hechos y que pudo ver el estado en el que se encontraba José Esteves poco después de ocurrido el incidente. A estos efectos, el Ministerio Público le mostró unas fotos tomadas al señor José Esteves pocos días después de lo sucedido, sobre las que declaró que reflejaban en algo el estado en el que se encontraba el señor Esteves la noche del incidente, pero aclaró que “aquella noche se veía mucho más mal”.
Sometido el caso por el Ministerio Público, la defensa presentó su prueba, la que consistió del testimonio de varios testigos oculares, entre ellos el señor Meraldo de la Torre, quien, como indicáramos anteriormente, fue puesto a disposición de la defensa por el Ministerio Público. Llamado a declarar como fue, atestó que reside en *1118 las Parcelas de Boquerón y que el día de los hechos se encontraba en la placita del poblado. Indicó que encontrándose allí, vio que José Estoves, a quien conocía a través de unos amigos, venía caminando “a paso ligero” en dirección de la plaza, y que detrás de éste venía Robin Bell con un palo en la mano. Testificó que en ese momento se montó en su carro y se dirigió en contra del tránsito hasta llegar donde se encontraba el señor Estoves. Continuó declarando que al ver las condiciones en las que se encontraba el señor Estoves, abrió la puerta del carro y le dijo que se montara que lo iba a llevar al hospital, lo que hizo.
A preguntas del Ministerio Público sobre las condiciones en las que se encontraba el señor Estoves esa noche, el testigo declaró que “estaba con los ojos bien hinchados, todo sangriento completo, y la boca no podía casi hablar, porque la tenía demasiado hinchada ”,
El segundo testigo de la defensa, José A. Ramírez Vélez, quien es Sargento de la Policía y el día de los hechos estaba destacado en el Sector de Boquerón, declaró que estando en el Cuartel de Boquerón, recibió una llamada, en la que le informaron que se había originado una pelea en el poblado. Cuando llegó al lugar del incidente, la pelea ya había pasado. Indicó que se dirigió a uno de los negocios aledaños al del señor Camacho y vio que en el baño del mismo estaba escondido el señor Carlos Casiano, el cual le dijo que “estoy aquí porque me van a matar”. También declaró que el señor Casiano le indicó que había ocurrido una pelea con el dominicano (Robin Bell) que estaba muy agresivo y que le dio a todo el mundo. Por último, declaró que no había entrevistado a Robin Bell, ni a ninguno otro de los involucrados, porque quien estaba a cargo de la investigación era el agente Padilla.
El tercer y último testigo aportado por la defensa lo fue el señor Enrique Martínez, quien declaró que el día de los hechos estaba sentado en la plaza del Poblado de Boquerón liberando el “stress”, cuando comenzó una pelea entre unos muchachos, el señor Camacho y Robin Bell; Testificó que los muchachos estaban agrediendo a estas dos personas hasta que Robin Bell pudo agarrar un taco de billar que tenía una persona en el lugar y “empezó a mandarle con el taco... a los que estaban agrediéndolo.” Continuó testificando que una vez esto ocurrió, uno de los muchachos, al que identificó como Carlos Casiano, salió corriendo y se metió en el negocio “Bistro”, y que otro de los muchachos, al que identificó como José Estoves, se fue hacia la plaza desde donde le tiró botellas a un grupo de personas que lo estaban persiguiendo, los que a su vez le tiraron botellas, aunque éste se encontraba herido. Por último, declaró que al ver el incidente, se fue del lugar para evitar problemas.
En el tumo de contrainterrogatorio, admitió que conocía al señor Camacho, porque era su tío y que aunque esa noche su tío estaba peleando y estaba siendo agredido, no salió a defenderlo, ni informó lo que estaba sucediendo a la Policía. Asimismo, admitió que nunca se comunicó con la Policía para informar lo que había presenciado, y que no fue hasta dos semanas antes del juicio que decidió comunicarse con su tío para informarle que había estado presente el día del incidente y que quería servir de testigo.
Sometido el caso con dicha prueba, el juzgador de los hechos emitió fallo de culpabilidad contra el aquí apelante por la comisión del delito de agresión agravada, en su modalidad menos grave, emitiendo posteriormente la sentencia aquí apelada.
II
Dirigiendo ahora nuestra atención al primer señalamiento de error, plantea el aquí apelante que el juez sentenciador incidió al no inhibirse de participar en el proceso criminal en su contra, a pesar de que dicho magistrado tuvo contacto previo con la prueba al presidir un proceso anterior que se celebró contra uno de los pejjudicados. Se trataba de un proceso anterior en el cual se le imputaba al peijudicado en el caso que nos ocupa (Sr. José Estoves Moreno) un delito de Alterar la Paz, por hechos que ocurrieron en fecha distinta a los que dieron base a la presentación de las denuncias que culminaron con la sentencia aquí apelada. Dicho caso *1119 concluyó con un fallo absolutorio. Así, argumenta el aquí apelante que el conocimiento previo que el Juez sentenciador tuvo de la prueba que fue aportada en dicho caso, tuvo el efecto de prejuiciado en su contra, violentando su derecho constitucional a un juicio justo e imparcial. Resolvemos, que no le asiste la razón en tal argumentación.
Como bien ha expresado el Tribunal Supremo, el mero contacto previo con la prueba de un caso no inhabilita per se al magistrado para intervenir y dirimir posteriormente los méritos de una controversia. In re: María Báez, 81 D.P.R. 274, 287 (19 59). Para que prospere en tal situación un planteamiento de violación al debido proceso de ley “hay que considerar la índole del procedimiento, el grado de relación del juez con la prueba y los probables efectos de esa relación sobre su desinterés e imparcialidad y calibrar esos factores a la luz de la entereza moral y la disciplina profesional que necesariamente debe tener cualquier juez que merezca ese nombre”. Id. Es decir, el análisis respecto a un planteamiento de esta naturaleza debe girar en tomo a la totalidad de las circunstancias concurrentes en el caso. Pueblo v. López Guzmán, 131 D.P.R. 867, 895-896 (1992).
Para que este contacto previo del juez con la prueba amerite la revocación de un dictamen previo y la celebración de un nuevo juicio, se requiere que el juzgador de los hechos haya participado activamente del proceso anterior, ya sea porque ha examinando personalmente a los testigos del caso, o porque dichos testigos fueron interrogados y contrainterrogados enérgicamente por la defensa y el Ministerio Público en su presencia Pueblo v. López Guzmán, 131 D.P.R. 867, 895 (1992). Véase, además, Pueblo v. Miranda Marchand, 117 D.P.R. 303, 307 (1986); Pueblo v. Toro Goyco, 84 D.P.R. 492, 496-497 (1962). En tales casos, la posibilidad real indiscutible que existe de que el juzgador haya formado opinión sobre la veracidad y suficiencia de lo declarado por los testigos, dicta que dicho magistrado se inhiba de presidir el juicio en su fondo del caso. Pueblo v. López Guzmán, supra, pág. 895. Ahora bien, si el contacto previo del juzgador con la prueba se limita a simplemente leer unas declaraciones juradas o unos informes, la actuación del juez se considera una pasiva que no deja o causa impresión alguna en su conciencia de juzgador. Pueblo v. López Guzmán, supra, págs. 895-896, y casos allí citados. Por ello, el Tribunal Supremo de Puerto Rico ha resuelto que en estos casos, de ordinario, no hay razones jurídicas de peso para descalificar al juez para presidir el juicio en su fondo, a menos que el acusado pueda demostrar afirmativamente el prejuicio o parcialidad que alegadamente existe en el magistrado que presidió el proceso. Id.
Al dirigir nuestra atención a la situación particular del caso que nos ocupa, evidente resulta que el Magistrado apelado no tuvo contacto previo con la pmeba que dio base al fallo y sentencia apelada. Se trataba, según indicado, de un proceso anterior independiente, en el que se le imputaba al aquí perjudicado, Sr. José Esteves Moreno, el delito de Alterar la Paz, el que concluyó mediante fallo absolutorio. De otra parte, ninguna alegación de prejuicio o parcialidad hizo el apelante ante el foro de instancia en tiempo oportuno a los fines ahora interesados, ni están presentes las circunstancias contempladas en la Regla 76 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; base y fundamento por los cuales las partes pueden solicitar la recusación de un juez para intervenir en un proceso. A tales efectos, dispone la Regla 78 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que la moción de inhibición deberá presentarse por lo menos veinte (20) días antes del juicio, o tan pronto como fuere posible de desconocerse los fundamentos de tal moción, lo que no hizo el aquí apelante. En consecuencia, habiendo incumplido el apelante su obligación de alegar y demostrar afirmativa y específicamente el prejuicio y parcialidad alegado, forzoso resulta concluir que carece de todo mérito tal primer señalamiento de error imputado. Pueblo v. Dones Arroyo, 106 D.P.R. 303 (1977). Meras alegaciones insustanciadas y conjeturas, ahora tardíamente formuladas en esta etapa de los procedimientos, resultan insuficientes a los fines pretendidos por el apelante. Concluimos, así, que el conocimiento inicial que tuvo el Juez Borges Vélez Collado de los hechos del caso que fue presentado contra el aquí perjudicado por Alteración a la Paz, no vició de inconstitucionalidad el procedimiento criminal celebrado contra el apelante.
*1120 III
Resta por considerar dos cuestiones adicionales planteadas por el apelante que, por estar dirigidas a impugnar la suficiencia de la prueba para establecer su culpabilidad más allá de duda razonable, las discutiremos en conjunto. Plantea el apelante que el foro de instancia erró al declarar culpable al acusado, a pesar de que el ministerio Público no estableció los elementos del delito, ni probó la culpabilidad del acusado más allá de duda razonable. Asimismo, sostiene que el análisis efectuado por dicho tribunal no constituye el balance más racional, justiciero y jurídico de la prueba.
Resolvemos que no se cometieron los errores imputados y que la prueba aportada por el Ministerio Público durante el juicio en su fondo, de ser creída como lo fue por el juzgador de los hechos, es suficiente para sostener el veredicto de culpabilidad rendido.
En el caso de autos, el aquí apelante fue convicto por el delito de agresión agravada en su modalidad menos grave, tipificado en el Artículo 95 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4032.
El Artículo 95 del Código Penal, 33 L.P.R.A. sec. 4032, contempla la agresión agravada en dos modalidades, a saber, como delito menos grave y como delito grave. En su modalidad menos grave, se incurre en el delito si se cometiere con la concurrencia de las circunstancias que se indican en el referido artículo; entre ellos, “cuando se cometiere con la intención de inferir grave daño corporal”. 33 L.P.R.A. sec. 4032 (d).
Observamos, así, que la modalidad menos grave imputada, contempla como agravante la agresión con intención de inferir grave daño corporal. La intención de inferir grave daño corporal puede deducirse de las circunstancias relacionadas con el mismo, el objeto usado, la conducta de un acusado y las consecuencias naturales o probables de su conducta. Arts. 14 y 15 del Código Penal, 33 L.P.R.A. secs. 3061 y 3062. Véase, además, Pueblo v. Felicier Villalongo, 105 D.P.R. 600 (1977). En cuanto a inferir grave daño corporal a la persona agredida, ha expresado el Tribunal Supremo que la frase daño corporal significa que “la lesión recibida debe ser peligrosa y dar lugar a aprensión”. Pueblo v. Gómez, 71 D.P.R. 816, 819 (1950); Pueblo v. Fonseca, 62 D.P.R. 433 (1943)
De otra parte, en nuestra jurisdicción, el precepto constitucional que garantiza al acusado la presunción de inocencia [Art. 2 Sec. 11 Constitución del Estado Libre Asociado] exige que toda convicción siempre está sostenida por pmeba que establezca, más allá de duda razonable, todos los elementos del delito y la conexión del acusado con los mismos. Pueblo v. Ramos y Alvarez, 122 D.P.R. 287, 315-316 (1988); Pueblo v. Bigio Pastrana, 116 D.P.R. 748, 760-761 (1985). Dicho mandato constitucional, a su vez, fue incorporado en la Regla 110 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 110, al proveer que:

“En todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá. Si la duda es entre grados de un delito o entre delitos de distinta gravedad sólo podrá condenársele del grado inferior o delito de menor gravedad. ”

Viene así obligado el Ministerio Público no sólo a presentar pmeba que conecte al acusado con la comisión del delito imputado, sino que la pmeba tiene que contener un quántum más allá de duda razonable para que pueda ser constitucionalmente suficiente para sostener una convicción. En cuanto a este particular, se ha establecido que el quántum de evidencia que constitucionalmente se requiere para una convicción es aquél que establece una certeza moral que convence, sobre todos los elementos del delito y la conexión del acusado con éstos. Pueblo v. Pérez Rivera, 129 D.P.R. 306, a la pág. 315 (1991). Dicha pmeba tiene que ser satisfactoria; es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupaciones o en un ánimo no prevenido. Pueblo v. Rosaly Soto, 128 D.P.R. 729, 739 (1991); Pueblo v. Cabán Torres, 117 D.P.R. 645, 652 *1121 (1986). La insatisfacción con la prueba es lo que se conoce como duda razonable y fundada. Pueblo v. Cabán Torres, supra, a la pág. 652. Ahora bien, “ello no significa que toda duda posible, especulativa o imaginaria, tenga que ser destruida. Sólo se exige que la prueba establezca aquella certeza moral que convence, que dirige la inteligencia y que satisface la razón”. Pueblo v. Pagan Ortiz, 130 D.P.R. 470, a la pág. 480 (1992).
De otra parte, es norma que ha sido reiterada por nuestro Tribunal Supremo que la valoración de la prueba corresponde al foro primario. Por ello, esa determinación de culpabilidad que hace el juzgador de los hechos a nivel de instancia es merecedora de gran deferencia por parte del tribunal apelativo, ello toda vez que, de ordinario, está en mejor posición para aquilatar la prueba testifical, ya que fue el que oyó y vio declarar a los testigos. Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975). Así, en ausencia de error manifiesto, pasión, prejuicio o parcialidad, un tribunal apelativo no intervendrá en la apreciación que de la evidencia sometida hace el juzgador de hechos en el tribunal de instancia, ni con el veredicto condenatorio emitido por un jurado o el fallo inculpatorio de un magistrado. Pueblo v. Rivera Diodonet, 124 D.P.R. 469 (1988); Pueblo v. Cabán Torres, supra, a la pág. 654. De tal modo, un foro revisor sólo puede revocar un fallo condenatorio cuando el análisis racional y ponderado de la prueba que desfiló ante el juzgador de los hechos produce una duda razonable y una insatisfacción de la evidencia. Pueblo González Román, Op. 20 de junio de 1995, 95 J.T.S. 86, a la pág. 989. Cuando esto ocurre, no se trata de una intervención con la función del juzgador de los hechos, sino un error de derecho que como tal es revisable. Id.
En el caso que nos ocupa hemos examinado minuciosamente la exposición narrativa de la prueba y encontramos que la prueba aportada por el Ministerio Público es suficiente en derecho para avalar el fallo condenatorio que es objeto de impugnación. Un examen sereno, detallado y desapasionado de la declaración de los testigos de cargo, hace evidente que la misma estableció más allá de duda razonable todos los elementos del delito, y la conexión del acusado apelante con los mismos. Además, el examen de la totalidad de la prueba que incluyó también fotografías que reflejan el estado en que quedó el perjudicado, luego de la agresión de la que fue objeto, no produce en nuestro ánimo una insatisfacción o intranquilidad de conciencia que amerite que intervengamos con la credibilidad que le mereciera al foro de instancia el testimonio de los testigos de cargo. Concluimos así que tal prueba es suficiente para establecer los elementos del delito imputado, así como la identidad y conexión del acusado con los mismos, más allá de duda razonable.
La prueba presentada y creída por el juzgador de los hechos fue a los efectos de que el apelante, en concierto y común acuerdo con el señor Luis Guzmán Díaz, también conocido como Robin Bell, agredió violentamente y sin provocación o justificación alguna al señor José Moreno Esteves el 18 de agosto de 1996 en el Poblado de Boquerón en Cabo Rojo. Ese día, como a las 11:30 p.m., el señor Moreno Esteves se encontraba en dicho poblado junto a otros dos amigos, Alberto Vázquez Ortiz y Carlos Casiano, cuando este último se enfrascó en una discusión con el señor Robin Bell, empleado del señor Ricardo Camacho, que provocó que el señor Camacho se alterara. Para evitar problemas, el señor Efraín García Maldonado, Vigilante del Departamento de Recursos Naturales y propietario de un negoció ubicado en o frente al del señor Camacho, intervino y se llevó a Robin Bell y al señor Camacho para el interior del negocio de este último. Al poco rato, comenzó nuevamente el forcejeo, pero esta vez entre Robin Bell y el señor Moreno Esteves, a lo que el señor Camacho respondió agrediendo en varias ocasiones al señor Esteves por la espalda con una banqueta que utilizaba para sentarse. El tribunal de instancia indicó en su sentencia que nada en la prueba justificaba la conducta del apelante, quien en forma violenta y sin ningún tipo de provocación, según por él determinado, agredió al señor Esteves Moreno, ocasionándole daños graves de tal naturaleza que requiriera su hospitalización. El estado en que quedó el Sr. Moreno Esteves, luego de la agresión de que fue objeto, quedó establecida, además, por varias fotografías que fueron tomadas varios días después del incidente, las que fueron admitidas en evidencia y obran en autos.
Dicha prueba, la que le mereció entero crédito al foro recurrido, contrario a la argumentación del apelante, *1122 resulta suficiente para establecer los elementos del delito, derrotar la presunción de inocencia y demostrar su culpabilidad más allá de duda razonable. Se trata de prueba conflictiva que fue ponderada y dirimida por el foro de instancia, quien dio completo crédito a aquélla que fue aportada por el ministerio Público y desmereció la que aportó el apelante. Se trata, pues, de una situación de apreciación de prueba, por lo que es al juzgador de los hechos a quien compete aquilatar y darle el peso y valoración que corresponda. Pueblo v. Rodríguez Román, 128 D.P.R. 121, 129 (1991); Pueblo v. López Rivera, 102 D.P.R. 359, 365-366 (1974).
De otra parte y según ya indicado, resulta improcedente intervenir con la apreciación que de la prueba haya hecho el tribunal de instancia, en ausencia de circunstancias que denoten pasión, prejuicio, parcialidad o error manifiesto. Ello obedece a que son los tribunales apelados los que, al tener la oportunidad de ver y oír a los testigos declarar, están en mejor posición para aquilatar la sinceridad de los testimonios. Pueblo v. Maisonave Rodríguez, 129 D.P.R. 49, 62-63 (1991).
IV
Por no haberse cometido los errores imputados, y por tener la certeza moral de que el fallo de culpabilidad está ampliamente sostenido por la prueba, se confirma la sentencia apelada.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 2000 DTA 80
1. Fue la contención de la defensa que no había renunciado a los términos de juicio rápido y que procedía la desestimación del cargo por infracción al Art. 94 del Código Penal, porque siendo menos grave, se debió celebrar el juicio por dicho delito sin esperar la determinación de vista preliminar del caso en que se le imputaba la comisión de un delito grave.